UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 22-cr-00195 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| JAKARI ALEXANDER LEE (01) | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Jakari Lee ("Defendant") is charged with one count of felon in possession of a firearm. The charge arises out of a traffic stop and subsequent search of Defendant's vehicle. Before the court is Defendant's Motion to Suppress (Doc. 19). For the reasons that follow, it is recommended that the motion be denied.

**Relevant Facts**

A hearing was held on the motion to suppress. The testimony at the hearing, along with bodycam footage of the traffic stop, established the following facts. Shortly before 1:00 a.m. on March 19, 2022, Shreveport Police Officer Brent Ouzts was on patrol in a high-crime area of Shreveport when he saw a Chevrolet Suburban roll through a stop sign. Ouzts got behind the Suburban, which then ran a second stop sign. Both failures to stop were captured on Ouzts' body cam. As Ouzts got closer to the vehicle, he saw that the vehicle had a temporary tag that was damaged, crumpled, and unreadable even from a close distance. Ouzts initiated a traffic stop based on the violations.

Defendant pulled over and stopped, but he did not put his vehicle in park. Based on Ouzts' training and experience, he knew that it is common for suspects who are going to attempt flight to stop the vehicle without putting it in park, wait for the officer to approach, then begin fleeing.

Ouzts exited his patrol vehicle and approached the passenger side of the Suburban. He pointed his flashlight through the windows and saw Defendant. Defendant was reaching back under the second row of seats with his arm fully extended. Ouzts approached the passenger side window and could smell the odor of marijuana emanating from the vehicle. Ouzts made contact with Defendant and asked Defendant to identify himself. Defendant gave a few different names and settled on Hannay Holtson. Ouzts observed that Defendant was hesitant to speak, stuttering, breathing rapidly, and appeared to be nervous and deceptive. Defendant stated that he did not have a driver's license or photo ID, but he gave Ouzts a Go Auto insurance document in the name of Jakari Lee. Ouzts asked if there were any firearms inside the vehicle, and Defendant hesitantly responded that there were not.

Ouzts went to his patrol vehicle and ran a check on the name "Hannay Holston" but did not find the name in any of his systems. Ouzts returned to Defendant's vehicle and explained that he was unable to find the information on the name Defendant provided. He asked Defendant for his name, and Defendant gave a different name before providing a different spelling of the name "Hannay Holston." Oustz asked for Defendant's social security number. After saying he could not remember the number and asking to make phone calls, Defendant provided Ouzts with a social security number.

As they were speaking, Ouzts saw Defendant leaning and reaching to his right. Ouzts addressed the actions, and Defendant stopped. Defendant then began to press his body against the driver's door to his left. Defendant's car was still not in park. This raised Ouzts' suspicions that Defendant was being deceptive and was possibly going to flee.

Ouzts was familiar with Defendant because deputies with the DeSoto Parish Sheriff's Office notified Shreveport police that Lee had an outstanding warrant for felony burglary. The deputies asked Shreveport police officers to be on the lookout for Defendant. Ouzts saw a post on the DeSoto Parish sheriff's Facebook page that had Defendant's picture and warrant information.

Ouzts returned to his patrol vehicle and contacted Corporal ____ Hammer, a K-9 officer who was on patrol in the area, and requested assistance from Hammer in conducting a high-risk removal of Defendant from his vehicle. Outzts believed this was necessary because of the protentional for flight or violence, as Defendant was labeled a violent offender. Hammer arrived on the scene, and Ouzts returned to the passenger side of Defendant's vehicle. Ouzts and explained to Defendant that he knew Defendant's identity. Defendant denied being Jakari Lee multiple times. Ouzts instructed Defendant to exit the vehicle. Defendant refused and began reaching toward to steering wheel and gear shift. Ouzts drew his firearm and again instructed Defendant to get out of the vehicle. Defendant put his vehicle in park and exited the vehicle. During this interaction, Defendant was sweating, breathing rapidly, and looking around as if searching for a way out. Ouzts recognized these actions as indicators of intent to flee.

Ouzts instructed Defendant to get on the ground, but Defendant refused. Ouzts placed him on the ground and handcuffed him while advising him of his Miranda rights. Other officers arrived on the scene, and they assisted Ouzts with the search of Defendant's vehicle based on the apparent odor of marijuana. They found a marijuana roach in the front cupholder, multiple open containers of alcohol, mail addressed to Defendant, a pistol, and a Louisiana photo ID card belonging to Defendant. The pistol, which was located by Officer Tingler, was laying underneath the second-row seating near the area Defendant was reaching toward at the beginning of the stop.

**Defendant's Motion to Suppress**

Defendant argues that his arrest and the search of his vehicle violated his Fourth Amendment rights. Defendant also argues that any statements he made were not made pursuant to a valid Miranda waiver. However, the facts established at the hearing did not reveal any custodial statements made by Defendant. Accordingly, that issue is moot.

**Analysis**

**A. Initial Traffic Stop**

"The reasonableness of traffic stops and investigative detentions of motorists who are suspected of criminal activity is analyzed under the framework established in Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Rosales-Giron, 592 Fed. Appx. 246, 250 (5th Cir. 2014); quoting United States v. Stevens, 487 F.3d 232, 244 (5th Cir. 2007). "Under Terry, we determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether

the officer's actions were reasonably related in scope to the circumstances that justified the stop." Id.

A traffic stop is justified at its inception when an officer has "an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005) (citation omitted). "[R]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." Id. Reasonable suspicion is a low threshold; it is not probable cause. See United States v. Castillo, 804 F.3d 361, 364, 367 (5th Cir. 2015). If officers "have probable cause to believe that a traffic violation has occurred," then there is also reasonable suspicion to stop the vehicle. Whren v. United States, 517 U.S. 806, 810 (1996).

Officer Ouzts testified that he saw Defendant run through two stop signs in violation of La. Rev. Stat. § 47:521. The dash camera video captures the violations. Defendant also had a temporary tag affixed to his vehicle that was damaged and illegible. Based on these violations, Ouzts had reasonable suspicion to stop Defendant. Accordingly, the traffic stop was justified at its inception.

### B. Extension of the Stop; Search of the Vehicle

Under the second prong of Terry, an officer's actions must be reasonably related in scope to the circumstances that justified the stop. Terry, 392 U.S. at 29. An officer's actions are not reasonably related if the officer detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless the officer develops

reasonable suspicion of additional criminal activity in the meantime. United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). If the officer develops reasonable suspicion of additional criminal activity during the investigation of the circumstances that originally caused the stop, the officer may further detain the occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion. Id.

Ouzts testified that he could smell the odor of marijuana when he first approached the vehicle. Due to the odor of marijuana emanating from the vehicle, Ouzts developed reasonable suspicion of additional criminal activity sufficient to extend the traffic stop. Furthermore, the Fifth Circuit has consistently held that the smell of marijuana provides an officer with probable cause to conduct a warrantless search of a vehicle. See, e.g., United States v. Lork, 132 Fed. Appx. 34 (5th Cir. 2005) (detectable odor of marijuana emanating from a vehicle provides probable cause for the search of the vehicle); United States v. Reed, 882 F.2d 147, 149 (5th Cir. 1989) (Border patrol agent's detection of odor of marijuana alone would have justified search of vehicle). Accordingly, the extension of the traffic stop was warranted, and the search of the vehicle was justified by probable cause.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 19) be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond

to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 22nd day of August, 2023.

Mark L. Hornsby
U.S. Magistrate Judge